KASHIF, Appellant,

v.

CENTRAL STATE UNIVERSITY, Appellee.

[Cite as *Kashif v. Cent. State Univ.* (1999), 133 Ohio App.3d 678.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–885.

Decided June 3, 1999.

*Carretta, Brezine & Mort Co., L.P.A.,* and *Don Brezine,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Susan C. Walker,* Assistant Attorney General, for appellee.

---

DESHLER, Judge.

This is an appeal by plaintiff, Annette I. Kashif, from a judgment of the Ohio Court of Claims, finding in favor of defendant, Central State University, on plaintiff's claims for breach of contract and promissory estoppel.

In 1994, plaintiff held a tenure-track position as an associate professor at Albany State University. During the summer of 1994, Dr. Jerry Scott, the chairman of defendant's department of education, contacted plaintiff regarding a position available at Central State University. Scott spoke with plaintiff by telephone, indicating that the position was for a research and field coordinator.

The vacancy announcement, posted by defendant, included the following description:

"Position: Research and Field Coordinator

"Responsible to: Dean, College of Education & Director, Center for Studies of Urban Literacy

"General description: The Center for Studies of Urban Literacy and the College of Education invite applications for a joint position in research and the coordination of field experiences to be carried out on 10 month contract with additional two month contracts in accordance with funding. The position requires a strong background in both literacy research and in work with schools."

Plaintiff was subsequently offered the position. She began working for defendant on October 1, 1994, even though she had not signed a contract as of that date. Plaintiff was presented a contract on October 12, 1994. The findings of the Court of Claims note that "[a]lthough plaintiff objected to the terms of the written contract," she signed the contract on October 14, 1994.

The contract terms provided in part that (1) plaintiff was employed as a research/field coordinator "for the period beginning October 1, 1994 and ending July 31, 1995"; (2) plaintiff was to be paid a total salary of $45,000 for that period, payable in monthly payments, "the first of which will be OCTOBER 31, 1994 and the last JULY 31, 1995"; and (3) the continuation of the agreement was subject to adequate funding by the "U.S. Department of Education, Title III (grant funding source)." Under a paragraph entitled "Special Provisions," the agreement stated, "This contract is a ten (10) month contract. Salary should be $4,500.00 per month for the period October 1, 1994 – July 31, 1995."

Plaintiff remained employed at the university throughout the 1994–1995 term. Plaintiff received a letter from Scott, dated August 19, 1995, offering plaintiff employment as an associate professor for the 1995–1996 academic year. The letter stated in part:

"The 1994–95 term contracts have expired. Central State University is offering you a term contract for 1995–96 as an Associate Professor in the Master of Education Program.

"Your salary for 1995–96 will be $45,000, and your office will be in Henderson, Room 137. The University Institute is scheduled for August 28 and 29. Classes begin on September 5. Your contract will be dated September 1 – June 30."

Plaintiff responded to this offer with a "counteroffer," in the form of a letter to Scott dated August 26, 1995. Specifically, plaintiff's response to Scott stated:

"On Thursday, August 24, I received your offer of a term contract for a full-time teaching position as Associate Professor for 1995–96. While I found the courses selected for me to teach to be within my interests and competencies, the terms of the offer do not reflect appropriate consideration for my previous achievements and contributions as a scholar and educator.

"* * * *

"I would accept a full-time faculty position as Associate Professor with the following terms:

"a. tenure-track

"b. salary of $46,500 or an increase the same as that for faculty across-the-board, whichever is higher

"c. time period of service the same as that of regular faculty

"I will await your response, as I am prepared to return as soon as these three points are resolved. * * *"

Scott sent a letter to plaintiff, dated August 31, 1995, which provided, "Your letter, dated August 26, 1995, indicated that you did not accept the position offered by the University. We wish you the very best in your future endeavors."

On April 26, 1996, plaintiff filed a complaint against defendant, alleging causes of action for promissory estoppel, wrongful discharge, and negligent infliction of emotional distress. On June 20, 1997, defendant filed a motion for summary judgment, which the court overruled by entry filed August 7, 1997.

The matter was tried before the court beginning on October 27, 1997. At trial, plaintiff testified that Scott had initially promised her that "I would have a job at least three years if I wanted it." Plaintiff also testified that she was promised that the position included faculty status on a tenure track. According to plaintiff, she discussed the matter of correcting the contract with Scott in October 1994, and that Scott assured her that the issue would be resolved.

On June 1, 1998, the Court of Claims rendered its decision, finding in favor of defendant. More specifically, the court found that "all of the essential terms" of the written contract executed on October 12, 1994 "are set forth in clear and unambiguous language," thus precluding the use of parol terms to contradict or vary the express, written agreement.

On appeal, plaintiff sets forth the following assignments of error for review:

"I. It is error for the Trial Court to fail to find the existence of two contracts, one oral and multi-year, the other written and for one year and also for the Court to apply the parol evidence rule to the written contract when Plaintiff does not claim that the written contract was modified by parol evidence.

"II. It is error for the Trial Court to fail to see that at least two contracts were entered by the parties, one a written one-year contract and the other an oral multi-year contract and for the Court to assume that the multi-year contract was somehow integrated into the one-year contract, this conclusion by the Court being contrary to long-standing custom in institutions of higher education, and contrary to the clear intentions of the parties in this case.

"III. It is error for the Trial Court to ignore the existence of an oral multi-year agreement between the parties and thereby to misconstrue Plaintiff's promissory estoppel claim and to fail to apply Plaintiff's promissory estoppel claim not to the written contract but to the oral multi-year contract, thereby preventing the Plaintiff from invoking the doctrine to estop Defendant from asserting that the oral multi-year contract violates the Statute of Frauds."

Plaintiff's assignments of error are interrelated and will be discussed together. Under the first assignment of error, plaintiff contends that the trial court erred in failing to find the existence of two contracts, one an oral, multiyear contract, and the other a written, one-year contract. Plaintiff argues that the parol

evidence rule is not relevant to the instant case and thus that the court erred in applying the rule to preclude the "multi-year oral agreement." Under the second assignment of error, plaintiff asserts that the trial court's decision was contrary to custom and practices between professional educators and institutions of higher education regarding multiyear agreements. Under the third assignment of error, plaintiff contends that the trial court misconstrued plaintiff's promissory estoppel argument.

■ The basic issue before the trial court in the instant case was whether, in light of the written contract for employment executed by the parties on October 14, 1994, plaintiff should be permitted to prove by parol evidence the terms of an alleged oral multiyear agreement. As noted above, the trial court concluded that the written agreement was free of ambiguity and that the parol evidence rule thus precluded plaintiff's attempt to introduce evidence of an oral agreement that varied the terms of the written contract. We agree.

In *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080, the Ohio Supreme Court noted:

" 'The Parol Evidence Rule was developed centuries ago to protect the integrity of written contracts.' Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 2. The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. *Id.* 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' 3 Corbin, Corbin on Contracts (1960) 357, Section 573. See, also, *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265.

"As is apparent from the foregoing, the parol evidence rule will not be overcome by merely alleging that a statement or agreement made prior to an unambiguous written contract is different from that which is contained in the contract. Stated differently, 'an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.' *Marion* [*Prod. Credit Assn. v. Cochran* (1988)], 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus."

In the present case, we find that the trial court properly determined that the written contract of employment signed by plaintiff on October 14, 1994, is clear and unambiguous. The contract sets forth the terms and conditions of the

relationship between plaintiff and the university regarding plaintiff's teaching duties for the 1994–1995 academic year. This includes the unambiguous provision that "[t]his contract is a ten (10) month contract," and that the salary "should be $4,500.00 per month for the period October 1, 1994 – July 31, 1995." Plaintiff now seeks to show that an oral agreement was entered into prior to the written 1994 contract that would clearly alter the terms of the contract, *i.e.*, plaintiff seeks to prove that, based on the oral agreement, she was given a three-year position as an associate on a tenure track. However, the promise of a three-year, tenure-track position is clearly at variance with or contradictory to the written contract. We conclude that the trial court properly applied the parol evidence rule to exclude evidence of prior collateral agreements.

■ Plaintiff's contention that the trial court erred in failing to consider the usual and customary practices between higher education institutions and professors is unpersuasive. Where the terms of a contract are clear and unambiguous, the trial court is not required to consider parol evidence of general custom or usage. *Anderson v. Van's Photo & Video Warehouse, Inc.* (May 11, 1998), Stark App. Nos. 1997CA00442 and 1998CA00007, unreported, 1998 WL 401166. See, also, *W.P. Hairston v. A.M. Kinney, Inc.* (Apr. 8, 1981), Hamilton App. No. C–800184, unreported, 1981 WL 9718 (where terms of employment contract are clear and unequivocal, "parol testimony of a * * * custom tending to vary the terms of an integrated contract is barred as incompetent by the parol evidence rule"); *Smith v. Benefit Plans Risk Mgt., Inc.* (June 6, 1988), Hancock App. No. 5–86–23, unreported, 1988 WL 57606 (trial court did not err in failing to allow parol evidence of custom and practices of insurance industry where terms of written contract were not uncertain).

■ Finally, plaintiff contends that the trial court erred in finding that plaintiff was barred from relying on the theory of promissory estoppel to alter the terms of the written agreement. The trial court, in rejecting plaintiff's promissory estoppel claim, relied upon the Ohio Supreme Court's decision in *Schory, supra,* as well as this court's decision in *Lippert v. Univ. of Cincinnati* (Oct. 3, 1996), Franklin App. No. 96API03–349, unreported, 1996 WL 566012. In *Schory,* the Supreme Court held that, where a contractor and lender had entered into a written agreement, the contractor could not introduce parol evidence of an alleged oral agreement to assert promissory estoppel.

In *Lippert, supra,* the plaintiff alleged that he had been promised a three-year tenure-track professorship at a university, as well as a subsequent promise to convert his one-year visiting professorship into a full-time tenure-track position and to place him first in line for the next tenure-track position. The trial court granted summary judgment in favor of the university, based on the provisions of the written contract. On appeal, plaintiff alleged that the trial court erred in

failing to consider his promissory estoppel claim. Relying on the Supreme Court's holding in *Schory, supra,* this court in *Lippert* rejected plaintiff's promissory estoppel argument, holding:

"While this court allows promissory estoppel claims to be argued alternatively to breach of contract claims * * *, the oral agreement on which the promissory estoppel claim is based cannot be used to alter the unambiguous written contract. *Schory.* Under the facts of this case, where a written contract is properly determined to be unambiguous, the trial court does not err in entering summary judgment, barring the promissory estoppel claim."

In the present case, we agree with the trial court's determination that, where plaintiff was employed for a definite term according to a written agreement, plaintiff cannot invoke the doctrine of promissory estoppel on the basis of alleged promises that contradict that written contract. *Schory; Lippert, supra.* See, also, *Freeman v. Montessori School of Bowling Green, Inc.* (Sept. 2, 1994), Wood App. No. 93WD098, unreported, 1994 WL 476025 (doctrine of promissory estoppel does not apply "because appellant was employed by a written limited one-year contract"); *Warren v. Trotwood–Madison City School Dist. Bd. of Edn.* (Mar. 19, 1999), Montgomery App. No. 17457, unreported, 1999 WL 148233 ("promissory estoppel is inconsistent with the existence of an express written contract"); *Gallant v. Toledo Pub. Schools* (1992), 84 Ohio App.3d 378, 386, 616 N.E.2d 1156, 1161 (promissory estoppel claim does not apply to vary terms of written limited one-year contract); *Borowski v. State Chem. Mfg. Co.* (1994), 97 Ohio App.3d 635, 643, 647 N.E.2d 230, 235 ("Promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter").

Based upon the foregoing, plaintiff's first, second, and third assignments of error are overruled, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

LAZARUS, P.J., and TYACK, J., concur.